Chris L. Andrus
Law Office of Chris L. Andrus PLLC
Utah Bar Number: 10465
Post Office Box 859
Orem, UT 84059
Tel. (801) 810-7850
Fax  (801) 303-7378
chrisandrusjd@yahoo.com

Attorney for Debtor Star Mountain Enterprises, LLC,
and Anna Stehrenberger

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Star Mountain Enterprises, LLC,<br><br>Debtor. | **MOTION TO QUASH SUBPOENAS FOR RULE 2004 NOTICE AND EXAMINATIONS AND RELATED SUBPOENA DUCES TECUM OR IN THE ALTERNATIVE TO MODIFY AND FOR PROTECTIVE ORDER AND FOR SANCTIONS**<br><br>Bankruptcy No. 19-24015<br><br>Chapter 7<br><br>Honorable R. Kimball Mosier |

**MOTION TO QUASH SUBPOENAS FOR RULE 2004 NOTICE AND EXAMINATIONS AND RELATED SUBPOENA DUCES TECUM OR IN THE ALTERNATIVE TO MODIFY AND FOR PROTECTIVE ORDER AND FOR SANCTIONS**

COMES NOW the Debtor, STAR MOUNTAIN ENTERPRISES, LLC, ("Debtor"), Tamio Stehrenberger and Anna Stehrenberger ("Anna") by and through the undersigned counsel, and moves this court to quash alleged creditor Michiko Stehrenberger's ("Michiko") subpoenas for 2004 examinations and related request for production of documents, or to modify the same, and for a protective order.

Michiko served multiple subpoenas for Rule 2004 examinations along with document requests on Debtor's counsel for Tamio and Anna, who at the time were unrepresented named persons.  The subpoenas also contained multi-part requests for productions of documents Michiko already obtained in a state court proceeding or known to Michiko to not be in the possession of Tamio and/or Anna.

The first subpoena set the examination date earlier than the 14 days notice required. Debtor's counsel objected to the first set of subpoenas due to the violation of the 14 day notice requirement.  Michiko next served a second set of subpoenas for a 2004 examination upon Debtor's counsel via email and mail for Anna.  This second set consisted of two separate subpoenas, each with a different examination date.  Michiko also served Debtor's counsel via email and US mail with a subpoena for Tamio.  Debtor's counsel again informed Michiko that service upon Debtor's counsel for the unrepresented party was invalid, that two different subpoenas was improper and the deponent, even if properly served, would not know which subpoena to appear on, and that the jurisdictional requirements for examining the deponents in California is not met by a subpoena signed solely by the Utah Bankruptcy Court.

These types of filings which lead to ambiguity and manipulation of the rules is historically consistent of Michiko's vexatious litigation tactics.  In several state court proceedings, Michiko severely abused the judicial process and now seeks to the same in this proceeding, leading Debtor to seek a protective order.  Michiko has been sanctioned by the Washington State courts for numerous filings at the trial and appellate levels, including trying to subpoena the trial judge and filing actions against opposing counsel.  She was sanctioned by a Utah State District Court for filing numerous contemporaneous motions.  She filed three similar cases against the same opponent in multiple United States District Courts at approximately the same time.  She served over 400 discovery requests in Washington and over seven sets of multi-part, excessive discovery in Utah.  Michiko has not changed and now seeks to commit the same abuses in this court, including placing an undue burden on Debtor and others by requesting excessive discovery, all of

which she has already obtained in the Utah state court proceedings.

For these reasons Debtor respectfully requests this court to quash the subpoenas and issue a protective order as follows below.

## MEMORANDUM

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's case in this district is proper.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Bankruptcy Rule 9016, and Section 105(a) of the Bankruptcy Code give authority to grant this motion.

### PROCEDURAL BACKGROUND

3.     Debtor filed a voluntary petition on June 2, 2019 in the United States Bankruptcy Court for the District of Utah.  The sec. 341 Meeting of Creditors was held on July 11, 2019.

4.     On August 16, 2019, Michiko served a subpoena for Rule 2004 Examination of Anna on counsel for Debtor.  Counsel for Debtor objected to Michiko because the subpoenas did not provide for 14 days notice and were improperly served.

5.     On August 26 and then September 5, 2019, Michiko served via email and later U.S. Mail, two additional subpoenas for a Rule 2004 examination of Anna on Debtor's counsel, who did represent Anna in this proceeding at the time.  Each subpoena also has a different compliance date: September 10, 2019 and September 25, 2019.  Michio also served Debtor's counsel via email and later by mail with a subpoena for Tamio's examination to take place on September 26, 2019.  Debtors counsel did not represent Tamio in this action at that time.  Each

3

examination was scheduled to take place in California.  See Exhibit A.  Debtor's counsel

informed Michiko and objected to these subpoenas on grounds of improper service, lack of a

subpoena from the court wherein the examinations were/are to take place, and the service of

multiple subpoenas at the same time leading to confusion as to how to comply.

6.      After informal discussions between Michiko and Debtor's counsel, a formal and

extended meet and confer was held on September 18, 2019.  Later attempts to meet and confer

were inhibited by scheduling conflicts and disagreement.

<strong>RELIEF REQUESTED</strong>

7.      Debtor respectfully requests that all of Michiko's subpoenas for Rule 2004

examinations be quashed and for a protective order that: 1) any discovery be abbreviated and

excludes those items already provided in other actions, 2) circumscribing discovery to only those

issues directly related to the nature of the creditor-debtor relationship between Michiko and

Debtor, 3) all discovery requests must state with particularity the discovery sought, 4) the

examination of only one designated officer of Debtor be taken, and 5) an order similar to that of

the Utah State court order proscribing Michiko from filing multiple motions at similar times.

<strong>ARGUMENT</strong>

**A.  Improper Service; No good Cause; Undue Burden; Sanctions**

8.      Bankruptcy Rule 9016 incorporates Rule 45 of the Federal Rules of Civil

Procedure for the service of subpoenas.  In relevant part: "Serving a subpoena requires delivering

a copy to the named person and, if the subpoena requires that person's attendance, tendering the

fees for 1 day's attendance and the mileage allowed by law," and

A subpoena may command a person to attend a trial, hearing, or deposition *only* as

follows: (A) within 100 miles of where the person resides, is employed, or regularly

transacts business in person; or (B) within the state where the person resides, is

employed, or regularly transacts business in person, if the person (i) is a party or a party's

officer.

Fed.R.Civ.P. 45(b)(1) and 45(c)(1) (emphasis added).

9.      Fed.R.Civ.P. 45(d)(3) states:

On timely motion, the court for the district where compliance is required must quash or
modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver
applies; or
(iv) subjects a person to undue burden.

10.     Subpoenas also must generally be served directly on the named person according

to Rule 45(b)(1), not via mail or on counsel:

 *Rule 45(b)(1)* provides in pertinent part that "[s]erving a subpoena requires delivering a
copy to the named person." *Fed.R.Civ.P. 45(b)(1)*. Wright & Miller explain that the
"longstanding interpretation of *Rule 45* has been that personal service of subpoenas is
required," based on the literal construction of the word "delivering" in the rule:
The use of the word "delivering" in *subdivision (b)(1)* of the rule with reference to the
person to be served has been construed literally. Under this construction, contrary to the
practice with regard to the service of a summons and complaint, it is not sufficient to
leave a copy of the subpoena at the dwelling place of the witness. Moreover, *unlike
service of most litigation papers after the summons and complaint, service on a person's
lawyer will not suffice.*
9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §2454 (2d ed.
2007); *see e.g., Briarpatch Ltd., L.P. v. Geister Roberdeau, Inc., 2006 U.S. Dist. LEXIS
28960, 2006 WL 1311967 (S.D.N.Y. 2006)*; *Chima v. U.S. Dept. of Defense, 23 Fed Appx.
721, 724 (9th Cir. 2001)* (District court did not erred in refusing to compel defense
witnesses to comply with subpoenas served by mail rather than personal service.); *Agran
v. City of New York, 1997 U.S. Dist. LEXIS 2577, 1997 WL 107452, at *1 (S.D.N.Y.
March 11, 1997)* (holding that the court was without authority to sanction service of a
subpoena by mail); *F.T.C. v. Compagnie e Saint-Gobain-Pont-A-Mousson, 205 U.S. App.
D.C. 172, 636 F.2d 1300, 1312-13 (D.C.Cir. 1980)* ("[C]ompulsory process [under *Rule
45*] may be served upon an unwilling witness only in person.").

*Bank of Okla. V. Arnold*, 2008 U.S. Dist. LEXIS 12677; 2008 WL 482860 (N. Dist. Okla.)[1] (emphasis added)

11.      Michiko's requests for Rule 2004 examinations should also be quashed because she has not demonstrated, and cannot demonstrate, "good cause" as to why she requires documents she already has in her possession.  See, e.g., *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("[O]nce a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery."); see also *In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984) (same).  The  burden of  showing good cause is an affirmative one that a proponent can meet only by showing that the materials are "necessary to establish the movant's claim... or for the protection of its legitimate interests" or "that denial of production would cause undue hardship or injustice." *In re Youk-See,* 450 B.R. 312, 320 (Bankr. D. Mass. 2011) (internal citations omitted).  Michiko cannot demonstrate any of the foregoing basis to sustain her request.

12.      Michiko's multiple subpoenas violate each the above rules and this court should quash the subpoenas.  First, the subpoenas were served on Debtor's counsel and not on the named persons.  Second, the subpoenas, which demand compliance in California, were issued by the Bankruptcy Court for the District of Utah and no transfer to nor issuance of the subpoenas was made by the California court which has jurisdiction.  Additionally, because the documents requested in the subpoenas were already provided in a previous action, Michiko cannot demonstrate good cause. Last, Michiko has sought to impose an undue burden on Debtor by

---

[1] *Bank of Okla.* provides a comprehensive overview of the standards for service.

demanding production of documents either already in Michiko's possession or not under the custody and control of Debtor.

13.     Fed.R.Civ.P. 45(d)(1) provides:

*Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

14.     Michiko knows that she is imposing an undue burden on Debtor by demanding documents that she already has in her possession or are not available.  Michiko did not seek to comply with Fed.R.Civ.P. 45(d)(1) prior to serving her subpoena.

**B.  Michiko's history of vexatious litigation demonstrates the need for a protective order in this case.**

15.     Michiko has already been sanctioned by the Washington State Supreme Court and a Utah State District Court for excessive filings and discovery, who have otherwise opined on her improper filings:

16.     "After [Michiko] filed several additional motions, including motions to subpoena the trial judge and members of this court who decided her case, the trial judge entered an order restricting [Michiko] from filing additional motions without the court's leave."   See Exhibit B, pp. 1-2.

17.     "[T]he trial court did not abuse its discretion in imposing filing restrictions on [Michiko]. As the court noted, [Michiko's] case had been decided on the merits and affirmed on appeal. After her appeal, the trial court had denied her post judgment motions. After this denial, she moved to subpoena the trial judge and the panel of this court who decided her case on

7

appeal. The trial court determined that these continued post judgment motions were 'without legal or factual basis [and] constitute[d] abuse of the judicial process.'"  See Exhibit B, p.4.

18.     Further, the threat of paying attorney fees or other sanctions does not seem to dissuade Michiko from abuse of judicial process.  In Washington State, the trial court awarded costs and attorney fees to her opposing party in the amount of $98,446.76 on a $46,598.53 judgment.  The trial court stated that the amount of fees and costs was "reasonable and necessary to prosecute plaintiff's claims in light of defendant's protracted defense of this matter."[2]  See Exhibit C, pp. 1, 5.

19.     Michiko now attempts to use the same tactics in subpoenas, including a tremendously overbroad and unduly burdensome subpoena duces tecum and subpoenas for Rule 2004 examinations.

20.     Fed.R.Civ.P. 26(c), incorporated via Bankruptcy Rule 7026, provides this court with authority to issue a protective order and states:

The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(A) forbidding the disclosure or discovery;
(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
(C) prescribing a discovery method other than the one selected by the party seeking discovery;
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

---

[2] Opposing counsel in the Washington State cases also felt that Michiko's abuse of the judicial process was overboard and caused undue burden on his client.  He stated in one brief, The Superior Court recognized that Stehrenberger is a vexatious litigant. Having taken her case all the way up to the Washington Supreme Court, she has apparently decided to start over again by attacking the Superior Court, this Court, and the entire judicial-retirement system," and "The Superior Court properly denied [Michiko's] motions under CR 59 and 60, and barred [her] from continuing her vexatious litigation."   See Exhibit D, Brief of Respondent JPMorgan Chase Bank, N.A., at pp.4, 9.

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

21.    Michiko has already demonstrated that she will embark on excessive discovery in this case and a protective order is respectfully requested in accordance with the Relief Sought above.  Even subtracting for the one that did not comply with the 14 day notice requirement, two subpoenas have been served on a single individual leaving Debtor, Tamio and Anna to speculate as to what is being asked for compliance.  And Michiko has already shown that the possibilities of sanctions and paying opposing party attorney fees do not dissuade her from judicial abuses.  For these reasons Debtor respectfully requests a protective order in accordance with that illustrated above and whatever additional relief the court deems is reasonable.

Dated: September 23, 2019

LAW OFFICE OF CHRIS L. ANDRUS PLLC


 /s/ Chris Andrus                                              
Chris Andrus, Esq.
*Attorney for Debtor Star Mountain Enterprises,*
*LLC, and Anna Stehrenberger*

9

## CERTIFICATE OF SERVICE

On the dates set forth below I served, or caused to be served, the following:

Documents served:

**MOTION TO QUASH SUBPOENAS FOR RULE 2004 NOTICE AND EXAMINATIONS AND RELATED SUBPOENA DUCES TECUM OR IN THE ALTERNATIVE TO MODIFY AND FOR PROTECTIVE ORDER AND FOR SANCTIONS**

Mode of service:

Electronic Filing by the court ECF system upon:

Kenneth A. Rushton, Chapter 7 Trustee,  P.O. Box 212, Lehi, UT 84043
KRus8416@aol.com

U.S. Trustee, USTPRegion19.SK.ECF@usdoj.gov

And via email and U.S. Mail on September 25, 2019:

Michiko Stehrenberger, 431 Lakeview Road, Lynwood, WA 98087
document.request@gmail.com

I certify, under penalty of perjury, that the foregoing is true and correct and that this Certificate of Service was executed by me on this following date.

DATED:  September 24, 2019

  /s/ Chris Andrus_____
Chris Andrus

# EXHIBIT A

*NOTICE OF SUBPOENA*

B2540 (Form 2540 – Subj

SEPT 10 @ NOON ⎫
SEPT 25 @ NOON ⎬ WESTLAKE VILLAGE, CA
SEPT 26 @ NOON ⎭

In re **TAANEN**

PLEASE EMAIL ASAP IF QUESTIONS
AND TO CONFIRM ATTENDANCE OF
WITNESSES AND PRODUCTION OF DOCS.
THANKS!

EMAIL: DOCUMENT.REQUEST@GMAIL.COM

To: **TAMIO ST**

[X] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE   Office Evolution | DATE AND TIME |
|---|---|
| 30721 Russell Ranch Rd #140, Westlake Village, CA 91362 **IMPORTANT: text (206) 229-4415 to confirm directions and to request confirmation prior to driving to location | September 10, 2019 12:00 noon Pacific |

The examination will be recorded by this method:   **Audio and/or audiovisual recording**

[X] *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

**Please see accompanying list (#1-36) of documents, as requested with other subpoena for documents due August 19, 2019.**

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  9.23.19

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*    OR    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:

USBC   350 S. Main #301   SLC   Ut   84101   801-524-6087

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# UNITED STATES BANKRUPTCY COURT

District of UTAH

In re STAR MOUNTAIN ENTERPRISES, LLC Case No. 19-24016

Debtor

Chapter 7

## SUBPOENA FOR RULE 2004 EXAMINATION

To: ANNA STEHRENBERGER

*(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Office Evolution | September 10, 2019, |
| 30721 Russell Ranch Rd #140, Westlake Village, CA 91362 | 12:00 noon Pacific |
| **IMPORTANT: text (206) 229-4415 to confirm directions and | ** NOTE: May need to wait for other exams |
| to request confirmation prior to driving to location | to conclude first |

The examination will be recorded by this method: Audio and/or audiovisual recording

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

Any tax returns/filings including partnership returns and k-1 forms, all corporate documents (operating agreements, votes, meeting minnutes, etc.), all financial account statements (including bank statements, Landmark/Bray-Conn 10032 account statements, etc.), any promissory notes to which debtor Star Mountain or any of its members or partners are a party, including but not limited to notes relating to Michiko Stehrenberger, Francine Yeh, Ken Hsieh, Landmark Venture Capital, LLC, Stanley Lott, Pamela Easter, and any other person or entity.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached -- Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 1 23 19

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*   OR   *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:

USBC  350 S. Main # 301  SLC Ut  84101   801-524-6087

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

### District of  UTAH

In re  STAR MOUNTAIN ENTERPRISES, LLC  Case No. 19-24016

Debtor

Chapter  7

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  ANNA STEHRENBERGER

*(Name of person to whom the subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE                Office Evolution | DATE AND TIME |
|---|---|
| 30721 Russell Ranch Rd #140, Westlake Village, CA 91362  **IMPORTANT: text (206) 229-4415 to confirm directions and to request confirmation prior to driving to location | Wednesday, September 25, 2019, 12:00 noon Pacific  ** NOTE: May need to wait for other exams to conclude first |

The examination will be recorded by this method:  Audio and/or audiovisual recording

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

Any tax returns/filings including partnership returns and k-1 forms, all corporate documents (operating agreements, votes, meeting minnutes, etc.), all financial account statements (including bank statements, Landmark/Bray-Conn 10032 account statements, etc.), any promissory notes to which debtor Star Mountain or any of its members or partners are a party, including but not limited to notes relating to Michiko Stehrenberger, Francine Yeh, Ken Hsieh, Landmark Venture Capital, LLC, Stanley Lott, Pamela Easter, and any other person or entity.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  9 23 19

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
_____, who issues or requests this subpoena, are:

USBC  350 S. Main # 301  SLC UT 84101      801-524-6087

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# UNITED STATES BANKRUPTCY COURT

District of  UTAH

In re  STAR MOUNTAIN ENTERPRISES, LLC  Case No. 19-24016

Debtor

Chapter   7

### SUBPOENA FOR RULE 2004 EXAMINATION

To:  TAMIO STEHRENBERGER

*(Name of person to whom the subpoena is directed)*

[X] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Office Evolution <br> 30721 Russell Ranch Rd #140, Westlake Village, CA 91362 <br> **IMPORTANT: text (206) 229-4415 to confirm directions and <br> to request confirmation prior to driving to location | **Thursday, September 26, 2019 <br> 12:00 noon Pacific** |

The examination will be recorded by this method:  Audio and/or audiovisual recording

[X] *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

Any tax returns/filings including partnership returns and k-1 forms, all corporate documents (operating agreements, votes, meeting minnutes, etc.), all financial account statements (including bank statements, Landmark/Bray-Conn 10032 account statements, etc.), any promissory notes to which debtor Star Mountain or any of its members/partners are a party, including but not limited to notes relating to Michiko Stehrenberger, Francine Yeh, Ken Hsieh, Landmark Venture Capital, LLC, Stanley Lott, Pamela Easter, and any other person or entity.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  7 23 19

CLERK OF COURT

_____     OR     _____

*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* _____ , who issues or requests this subpoena, are:

360 S Main #301 SLC Ut 84101     801-524-0687

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT B

**JPMORGAN CHASE BANK, N.A., Respondent,**

**v.**

**MICHIKO STEHRENBERGER, Appellant.**

<u>No. 73493-8-I.</u>

**Court of Appeals of Washington, Division One.**

Filed: April 25, 2016.

Michiko Stehrenberger (Appearing Pro Se), C/o 1312 N. Monroe Street #122, Spokane, WA, 99201, Counsel for Appellants.

Steven K. Linkon, RCO Legal PS, 13555 Se 36th St. Ste 300, Bellevue, WA, 98006-1489, Fred B. Burnside, Davis Wright Tremaine LLP, 1201 3rd Ave Ste 2200, Seattle, WA, 98101-3045, Hugh Robert Mccullough, Davis Wright Tremaine LLP, 1201 3rd Ave Ste 2200, Seattle, WA, 98101-3045, Counsel for Respondents.

# UNPUBLISHED

RONALD COX, J.

A judge shall disqualify himself or herself from any case in which the judge's impartiality might reasonably be questioned.[1] But the Code of Judicial Conduct does not require a judge to disqualify himself or herself when the judge only has a de minimis economic interest in the case.

Here, Michiko Stehrenberger moved for relief under CR 60(b)(11), seeking to vacate a judgment based on the alleged failure of judges to disqualify themselves from her case. Because the judges had only de minimis interests in the case, the trial court properly denied her CR 60(b)(11) motion. Additionally, the court did not abuse its discretion when it restricted Stehrenberger from filing additional motions without first obtaining the court's leave. We affirm.

In 2007, Stehrenberger executed a promissory note to Washington Mutual. In 2008, Washington Mutual failed, and the Federal Deposit Insurance Corporation placed the bank in receivership. Under a purchase and assumption agreement, JPMorgan purchased all of Washington Mutual's assets, including its loans. In 2010, Stehrenberger defaulted by failing to make payments to JPMorgan under the terms of her promissory note.

In 2011, JPMorgan commenced this action on the delinquent note. Stehrenberger answered and asserted numerous defenses and counterclaims. After extensive discovery by Stehrenberger, JPMorgan moved for summary judgment on the delinquent note and Stehrenberger's counterclaims. The trial court granted JPMorgan's motion.

Stehrenberger appealed, arguing that JPMorgan lacked the authority to enforce the promissory note because it had never physically possessed the original promissory note. This court disagreed and affirmed the judgment in favor of JPMorgan.[2] Stehrenberger petitioned for review, which the supreme court denied.

After the supreme court denied review, Stehrenberger moved for relief from the judgment under CR 60(b)(11). She argued that the trial judge and the panel of judges on this court that decided her prior appeal had violated the Code of Judicial Conduct. Specifically, she claimed they failed to disclose financial interests related to J.P. Morgan Chase and also failed to disqualify themselves from ruling on her case. She also sought to have a different trial judge decide her current motion.

The trial judge declined to assign the motion to another judge. He also denied her motion. The judge determined that her CR 60 motion failed both procedurally and on its merits. Specifically, the court determined that Stehrenberger failed to establish non-disclosure of an economic interest in violation of the Code of Judicial Conduct.

After Stehrenberger filed several additional motions, including motions to subpoena the trial judge and members of this

court who decided her case, the trial judge entered an order restricting Stehrenberger from filing additional motions without the court's leave.

Stehrenberger appeals.

# DISQUALIFICATION

Stehrenberger argues that the trial judge and members of this court were disqualified from ruling on her case. We disagree.

Due process, the appearance of fairness doctrine, and the Code of Judicial Conduct may require that a judge disqualify him or herself from hearing a case under certain circumstances.[3]

"The Due Process Clause [of the federal constitution] entitles a person to an impartial and disinterested tribunal in both civil and criminal cases."[4] But the common law and state codes of judicial conduct generally provide more protection than due process requires.[5] Thus, courts generally resolve questions about judicial impartially without using the constitution.[6]

Under the appearance of fairness doctrine, judges must both be impartial and appear to be impartial.[7] "A judicial proceeding satisfies the appearance of fairness doctrine only if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing."[8] The claimant must submit proof of actual or perceived bias to support an appearance of fairness violation.[9]

Parties may raise an appearance of fairness claim in a CR 60(b)(11) motion.[10] A judge violates the appearance of fairness doctrine by failing to disqualify himself or herself when the Code of Judicial Conduct requires.[11]

Washington's Code of Judicial Conduct provides that judges shall disqualify themselves in "any proceeding in which the judge's impartiality[] might reasonably be questioned."[12] One such circumstance, for example, is where the judge has "has an economic interest[] in the subject matter in controversy or in a party to the proceeding."[13] But this requirement does not apply to de minimis interests.[14]

De minimis interests include:

> (1) an interest in the individual holdings within a mutual or common investment fund; . . . [or]
>
> (3) a deposit in a financial institution or deposits or proprietary interests the judge may maintain as a member of a mutual savings association or credit union, or similar proprietary interests.[[15]]

"A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification."[16]

If a judge disqualified under this rule discloses the economic interest on the record, the parties may agree that the interest is de minimis and that the judge is qualified.[17]

As a preliminary matter, the trial judge did not abuse his discretion by hearing Stehrenberger's CR 60 motion himself rather than transferring it to a different judge. A trial judge may properly hear a motion that accuses him or her of "violating the appearance of fairness doctrine by presiding over a trial and failing to disclose potential conflicts of interest."[18]

Moreover, the trial judge did not violate the Code of Judicial Conduct. Stehrenberger identified three interests she argued disqualified the trial judge: ownership of Washington Mutual stock, a retirement account that owns JPMorgan securities, and two mortgages/deeds of trust with JPMorgan. These interests are de minimis and do not require recusal or disclosure.

First, the trial judge's Washington Mutual stock was a de minimis interest because there was no evidence that this stock became JPMorgan equity when it purchased Washington Mutual. As explained earlier, Washington Mutual failed and the FDIC placed it in receivership. Any Washington Mutual stock that the trial judge owned presumably became worthless at that point. And as the trial court found, Stehrenberger did not present any evidence to show that this stock, rather than becoming worthless, became equity in JPMorgan when it purchased Washington Mutual from the FDIC.

Second, the trial judge's retirement accounts did not require disqualification in this case. The comments to the Code of Judicial Conduct establish that "interest[s] in the individual holdings within a mutual or common investment fund" are de minimis.[19] Here, the State invests the judge's retirement plan in "a diversified pool of investments" which includes holdings in JPMorgan. Accordingly, the trial judge had only an interest in an individual holding within a common investment fund, which is a de minimis interest.

Finally, the trial judge's mortgages/deeds of trust did not create an economic interest. Financial deposits, "proprietary interests the judge may maintain as a member of a mutual savings association or credit union, or similar proprietary interests," are de minimis interests. To the extent that a mortgage/deed of trust is a financial interest, it is a similar de minimis interest under this rule. Stehrenberger fails to cite any authority indicating otherwise.

For similar reasons, the panel of judges on this court who decided her prior appeal where not required to either disqualify themselves or disclose economic interests. As explained earlier, any interest in JPMorgan through the judicial retirement plan is de minimis. Likewise, the appellate judges' mortgages/deeds of trust did not require recusal.

The only other financial interest Stehrenberger identified was one of the appellate judge's ownership of a JPMorgan bond. This interest was also de minimis. That judge's public disclosure forms indicate ownership of a JPMorgan bond valued between $4,000 and $19,999. Under the circumstances of this case, this bond was insufficient for that judge's impartiality to "reasonably be questioned."[20] This case involved a $50,000 promissory note on which Stehrenberger owed $46,598.53. Given JPMorgan's size, there was no reasonable possibility that an adverse ruling on this case would impact JPMorgan's finances to such an extent as to put it at risk of default on its bond obligations. This possibility was so remote that the appellate judge had no more than a de minimis economic interest.

In sum, neither the trial judge nor the panel of this court violated the Code of Judicial Conduct.

Under the facts of this case, determining whether the Code of Judicial Conduct was violated also resolves whether there was either a violation of due process or the appearance of fairness.

Due process requires recusal only in "extraordinary situation[s]."[21] Here, the de minimis financial interests Stehrenberger identifies are not an extraordinary situation. Rather, the Code of Judicial Conduct "provide[s] more protection than due process requires" on this issue.[22]

Similarly, there is no violation of the appearance of fairness doctrine. Just as the de minimis interests are insufficient to create a situation where the judges' impartiality is reasonably questioned, these interests are also insufficient to violate the appearance of fairness doctrine. "[A] reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing."[23]

Thus, the trial court properly denied Stehrenberger's CR 60(b)(11) motion. Because of our resolution on this issue, we decline to reach the parties' arguments about whether Stehrenberger complied with that rule's procedural requirements.

Stehrenberger argues that retirement plans with holdings in JPMorgan are not de minimis interests because the judges' decision could "substantially affect[]" these interests. Specifically, she argues that the decision in her case could "impact [JPMorgan's] ability to collect on a bulk of other Washington Mutual-related assets."

The record does not support this argument. Stehrenberger's argument was that JPMorgan could not enforce the note because it had never physically possessed it.[24] JPMorgan was required to prove that Washington Mutual had possessed the note, not transferred the note to anyone else, and that the note's whereabouts could not be determined.[25] Thus, Stehrenberger's case was factintensive and unlikely to affect other assets received from Washington Mutual.

Stehrenberger also relies on Tumey v. Ohio[26] to argue that the interests in this case were not de minimis. But that case is distinguishable. In Tumey, a mayor who adjudicated cases received a $12 salary supplement for convictions, but no supplement for acquittals.[27] Additionally, fines imposed by the mayor funded the village government, which the mayor ran.[28] Thus, in Tumey, the financial interest was direct—the mayor received the salary supplement only for a conviction.

In contrast, for the reasons explained earlier, the financial interests in this case are so attenuated as to be de minimis.

## FILING RESTRICTION

Stehrenberger argues that the court abused its discretion by ordering her not to file additional motions without the court's leave. We disagree.

Courts have discretion to impose "reasonable restrictions on any litigant who abuses the judicial process."[29] Although due process provides a right to access the courts, this right is not unlimited.[30] Courts "`are mindful of the need for judicial finality and the potential for abuse of this revered system by those who would flood the courts with repetitive, frivolous claims which already have been adjudicated at least once.'"[31]

But mere proof of litigiousness does not support imposing filing restrictions.[32] Additionally, trial courts "`must be careful not to issue a more comprehensive injunction than is necessary to remedy proven abuses, and if appropriate the court should consider less drastic remedies.'"[33]

Here, the trial court did not abuse its discretion in imposing filing restrictions on Stehrenberger. As the court noted, her case had been decided on the merits and affirmed on appeal. After her appeal, the trial court had denied her post judgment motions. After this denial, she moved to subpoena the trial judge and the panel of this court who decided her case on appeal. The trial court determined that these continued post judgment motions were "without legal or factual basis [and] constitute[d] abuse of the judicial process."

As the court noted, Stehrenberger had received her day in court. And because JPMorgan had consistently received awards of attorney fees, the trial court could reasonably conclude that attorney fees were an insufficient sanction to deter frivolous filings.[34] Accordingly, requiring the court's leave to file additional motions was a reasonable restriction.

## ATTORNEY FEES

Both parties seek attorney fees on appeal. We conclude that JPMorgan is entitled to an award of attorney fees on appeal.

Parties in Washington may recover attorney fees if a statute, contract, or recognized ground of equity authorizes the award.[35] Here, the promissory note provides for attorney fees in an action to enforce the note. Because JPMorgan prevails, it is entitled to an award of attorney fees on appeal, subject to compliance with RAP 18.1.

We affirm the superior court's orders and award JPMorgan attorney fees on appeal, subject to its compliance with RAP 18.1.

STEPHEN J. DWYER, J., and ANN SCHINDLER, JJ., concur.

[1] CJC 2.11(A).

[2] JPMorgan Chase Bank, N.A. v. Stehrenberger, noted at 180 Wn. App. 1047, 2014 WL 1711765, review denied, 337 P.3d 325 (2014).

[3] In re Marriage of Meredith, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009).

[4] Tatham v. Rogers, 170 Wn. App. 76, 90, 283 P.3d 583 (2012) (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980)).

[5] Id.,

[6] Id., at 92.

[7] Id., at 80.

[8] Id., at 96.

[9] GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 154, 317 P.3d 1074 (quoting Magana v. Hyundai Motor Am., 141 Wn. App. 495, 523, 170 P.3d 1165 (2007)), rev'd on other grounds, 167 Wn.2d 570, 220 P.3d 191 (2009).

[10] Camarata v. Kittitas County, 186 Wn. App. 695, 713, 346 P.3d 822 (2015).

[11] Tatham, 170 Wn. App. at 94.

[12] CJC 2.11(A).

[13] CJC 2.11(A)(3).

[14] CJC 2.11 cmt. 6.

[15] Id.

[16] CJC 2.11 cmt. 5.

[17] CJC 2.11(C).

[18] Tatham, 170 Wn. App. at 88-89.

[19] CJC 2.11 cmt. 6(1).

[20] CJC 2.11(A).

[21] Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 887, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009).

[22] Id. at 890.

[23] Tatham, 170 Wn. App. at 96.

[24] JPMorgan Chase Bank, N.A., 2014 WL 1711765 at *3.

[25] Id.

[26] 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927).

[27] Tumey, 273 U.S. at 523.

[28] Id. at 533.

[29] In re Marriage of Giordano, 57 Wn. App. 74, 78, 787 P.2d 51 (1990).

[30] Yurtis v. Phipps, 143 Wn. App. 680, 694, 181 P.3d 849 (2008).

[31] Id. at 693 (quoting In re Pers. Restraint of LaLande, 30 Wn. App. 402, 405, 634 P.2d 895 (1981)).

[32] Id.

[33] Id. (quoting Whatcom County v. Kane, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981)).

[34] See Stehrenberger, 2014 WL 1711765 at *6.

[35] LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014).

Save trees - read court opinions online on Google Scholar.

# EXHIBIT C

## JPMORGAN CHASE BANK, N.A., Respondent,

### v.

## MICHIKO STEHRENBERGER, Appellant.

### No. 70295-5-I.

#### Court of Appeals of Washington, Division One.

Filed: April 28, 2014.

Michiko Stehrenberger (Appearing Pro Se), 215 S. Idaho St., Post Falls, ID, 83854, Counsel for Appellant(s).

Steven K. Linkon, Routh Crabtree Olsen PS, 13555 Se 36th St. Ste. 300, Bellevue, WA, 98006-1489; Fred B. Burnside, Davis Wright Tremaine LLP, 1201 3rd Ave. Ste. 2200, Seattle, WA, 98101-3045, Rebecca J. Francis, Davis Wright Tremaine LLP, 1201 3rd Ave. Ste. 2200, Seattle, WA, 98101-3047, Counsel for Respondent(s).

## UNPUBLISHED

COX, J.

Michiko Stehrenberger appeals the grant of summary judgment in favor of JPMorgan Chase Bank, N.A. (Chase) to enforce her admittedly delinquent loan obligation. Because Chase has the authority to enforce the note as the transferee of Washington Mutual Bank's (WaMu) assets, we affirm.

On September 11, 2007, Stehrenberger executed a promissory note in the amount of $50,000 to WaMu.

On September 25, 2008, WaMu failed, and the Federal Deposit Insurance Corporation placed the bank in receivership. Under a purchase and assumption agreement, Chase purchased all of WaMu's assets. The FDIC, as receiver, assigned to Chase "all right, title, and interest of the Receiver in and to all of the assets [of WaMu]." The agreement expressly included loans among the transferred assets. Chase received an electronic record generated by WaMu of the loan disbursements and payments made by Stehrenberger.

In 2010, Stehrenberger admittedly defaulted by failing to make payments to Chase. She claimed that the FDIC did not execute an assignment identifying her loan when it transferred WaMu's assets to Chase. She also claims that Chase did not have possession of the original note.

In 2011, Chase commenced this action on the delinquent note. Stehrenberger answered and asserted numerous defenses and counterclaims. The trial court granted Chase's motion to dismiss for some of the counterclaims. The trial court denied Stehrenberger's motion for reconsideration.

After extensive discovery by Stehrenberger, Chase moved for summary judgment on the delinquent note and Stehrenberger's unjust enrichment and Consumer Protection Act counterclaims. Stehrenberger moved for declaratory relief or partial summary judgment.

The trial court granted Chase's motion and dismissed the remaining counterclaims. It did so notwithstanding that Chase does not have possession of the original note. Chase does have copies, showing the terms of the note.

The trial court stated that Chase is owed $46,598.53 and past-due interest of $2,810.79 under the promissory note. Additionally, the trial court explained that Stehrenberger's motions were moot. The trial court denied Stehrenberger's motion for reconsideration.

Stehrenberger then sought "adequate protection" to guard against a third party attempting to enforce the lost promissory note. The trial court denied this motion.

The trial court also granted Chase's motion for attorney fees as prevailing party under the note. It awarded $98,446.76 in

attorney fees "in light of [Stehrenberger's] protracted defense of this matter." Stehrenberger appeals.

# AUTHORITY TO ENFORCE PROMISSORY NOTE

Stehrenberger argues that the trial court erred when it granted summary judgment to Chase. Specifically, she argues that Chase did not have the authority to enforce the promissory note because it never had physical possession of the original promissory note. We disagree.

Summary judgment decisions are reviewed de novo.[1] Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[2]

Under 12 U.S.C. § 1821(d)(2)(G)(i)(II), the FDIC has the authority to "transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer."

Here, the FDIC transferred all of WaMu's loans and loan commitments to Chase pursuant to a purchase and assumption agreement dated September 25, 2008. The agreement used broad language to describe the transfer of all of the failed bank's assets:

> Subject to Sections 3.5, 3.6 and 4.8, the Assuming Bank hereby purchases from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys, and delivers to the Assuming Bank, all right, title, and interest of the Receiver in and to *all of the assets* (real, personal and mixed, *wherever located and however acquired*) including all subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing.[3]

Given this broad language, Stehrenberger's promissory note is among the assets transferred to Chase.

There is no dispute that Stehrenberger's note is a negotiable instrument under Washington's Uniform Commercial Code (UCC). Accordingly, we look first to the UCC to determine whether Chase had the authority to enforce the note.

In Federal Financial Co. v. Gerard, this court explained that RCW 62A.3-203(b) sets out the rights of an assignee of a note:

> "*Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument,* including any right as a holder in due court, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument."[4]

This court concluded that "the unambiguous language of the above statutory provision supports the conclusion that the assignment of a note by the FDIC carries with it the right to enforce the instrument."[5] This court explained that this conclusion is consistent with "the policy of the Code that promotes a free market for negotiable instruments" and "Washington's common law respecting assignability of contract rights."[6]

Here, in accordance with Gerard, the FDIC's transfer of all assets of the failed bank to Chase carried with it the authority to enforce Stehrenberger's note. This is because Chase purchased *all* of WaMu's assets as shown by the purchase and assumption agreement.

Stehrenberger makes a number of arguments to challenge Chase's authority to enforce her promissory note. None are persuasive.

First, her primary argument is based on the Washington UCC provision that discusses the enforcement of lost, destroyed, or stolen instruments. Specifically, she contends that RCW 62A.3-309(a) required Chase to have physical possession of the original promissory note in order to enforce it. Because Chase admits that it never had physical possession of the note, she contends that Chase did not have the authority to enforce the note. We disagree.

RCW 62A.3-301 explains who is entitled to enforce a negotiable instrument:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) *a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309* or 62A.3-418(d).[[7]]

If a person is not in possession of the instrument, RCW 62A.3-309 explains when lost, destroyed, or stolen instruments may be enforced. There are number of requirements stated in two subsections of this statute. The first subsection provides:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.[[8]]

As a United States bankruptcy panel of the Ninth Circuit explained, "The plain meaning of RCW 62A.3-309(a) is that a person no longer in possession of an instrument is nonetheless entitled to enforce it if that person was in possession and entitled to enforce it when the loss of possession occurred."[[9]]

Since Chase admits that it never had possession of the original note, the issue is whether Chase can meet the requirements of RCW 62A.3-309(a). Because Chase purchased all of WaMu's assets and the rights that come along with them, Chase steps into the shoes of WaMu and can meet the statutory requirements in WaMu's capacity. As Chase argues, it proved the three requirements:

> WaMu possessed the Note and was entitled to enforce it because Stehrenberger admits signing the instrument and leaving it with WaMu (satisfying the first element). CP 249 ¶ 64. Stehrenberger presented no evidence on summary judgment (and none exists) showing WaMu transferred the Note to anyone except Chase, who bought the Note from the FDIC, as receiver (satisfying the second element). If WaMu lost the Note, then it is a tautology that the Note's whereabouts could not be determined (satisfying the third element). Accordingly, WaMu was entitled to enforce the Note, and Chase bought all the rights of WaMu, including the right to enforce the Note. See Gerard, 90 Wn. App. at 183.[[10]]

There is nothing in RCW 62A.3-309 that prohibited a lost, destroyed, or stolen instrument from being transferred to Chase. Thus, subsection (a) of RCW 62A.3-309 is not a barrier to Chase enforcing Stehrenberger's note.

Additionally, "Subsection (b) requires a proponent under subsection (a) to prove the terms of the instrument, *e.g.,* via a Lost Note Affidavit."[[11]] Chase met the requirements of the second subsection, RCW 62A.3-309(b), which states:

> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, RCW 62A.3-308 applies to the case as if the person seeking enforcement had produced the instrument.

Chase was able to prove the terms of the instrument by producing a true and correct copy of the instrument. Moreover, as previously discussed, Chase is entitled to enforce the instrument as the transferee of WaMu's assets.

Stehrenberger cites several cases from other jurisdictions, including <u>Dennis Joslin Co. v. Robinson</u> Broadcasting Corp.[[12]] These cases suggest that an assignee may not enforce a note that was lost, destroyed, or stolen *before* assignment.[[13]] But these extrajurisidictional cases do not control this case. Here, Chase is able to enforce the note because it purchased all of WaMu's assets and can fulfill the requirements of RCW 62A.3-309 in WaMu's capacity.

Second, Stehrenberger argues that Chase did not prove the elements of RCW 62A.3-309 because it did not produce a "lost note affidavit." But she fails to cite authority that a "lost note affidavit" is needed to prove the elements of RCW 62A.3-309. As previously discussed, Chase pointed to evidence that proves that the statutory requirements were met. It does not matter that they were not contained in a "lost note affidavit."

Third, Stehrenberger contends that even if Chase is the "owner" of the note "proof of *direct* physical possession by the `person seeking to enforce' is still required to be able to enforce a note that is a negotiable instrument." Because the previous analysis does not hinge upon whether Chase is the "owner" of the note, we need not address this argument.

Fourth, Stehrenberger asserts that Chase did not acquire WaMu's assets by operation of law. But the prior analysis does not make such assertion. Rather, the transfer was made pursuant to a purchase and assumption agreement. Thus, this argument is not relevant.

Fifth, Stehrenberger argues that "[u]nder RCW 5.46.010 a mere copy of a negotiable instrument is not admissible in place of the original for the purpose of seeking enforcing payment upon it." But that statute addresses evidentiary issues, not the UCC. It states that copies of business records are admissible.[14] Thus, this argument is not persuasive.

Sixth, Stehrenberger, in her reply brief, makes a number of arguments challenging the validity of the purchase and assumption agreement between the FDIC, as receiver of WaMu, and Chase. She cites Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC to assert that she has standing to challenge the assignment as an "obligor."[15] But, as that case explains, Stehrenberger does not have standing to challenge the assignment to which she was not party because she is not at risk for having to pay the debt twice.[16] Thus, these arguments are not persuasive.

Because the trial court properly granted summary judgment in favor of Chase, we deny Stehrenberger's request that we reverse the dismissal of her unjust enrichment and Consumer Protection Act claims.

Chase also asserts that we may affirm the trial court based on res judicata. Given our previous discussion, we need not to rely on this basis.

# ADEQUATE PROTECTION

Stehrenberger next argues that the trial court abused its discretion when it denied her CR 59 motion to amend the judgment to provide her with adequate protection against a third party from enforcing the promissory note. We disagree.

RCW 62A.3-309(b) provides an adequate protection requirement when a person seeks to enforce a lost, destroyed, or stolen instrument:

> The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

CR 59(h) authorizes the trial court to alter or amend a judgment if a motion is brought within 10 days. This court reviews a trial court's denial of a CR 59 motion to amend judgment for abuse of discretion.[17]

Here, the trial court did not abuse its discretion in denying the motion to amend. Stehrenberger's promissory note was payable to WaMu, and Chase is now the only entity that can enforce WaMu's loans. There is no evidence that she is at risk of having any entity other than Chase attempt to enforce the loan. Given this low risk, the trial court did not abuse its discretion when it denied the CR 59 motion.

# ATTORNEY FEES

Finally, Stehrenberger asserts that the trial court abused its discretion when it awarded Chase $98,446.76 in attorney fees as the prevailing party under the promissory note. Specifically, she argues that the trial court did not consider her objections to Chase's billings. We disagree.

Under RCW 4.84.330, the prevailing party in an action to enforce or defend a contract is entitled to attorney fees and costs as provided by the contract.[18] As the parties agree, the promissory note provides that the bank is entitled to attorney fees and costs. RCW 4.84.330 makes this unilateral provision bilateral. Thus, the "prevailing party" is entitled to an award.

We review the amount of an attorney fee award for an abuse of discretion.[19]

Stehrenberger does not dispute that Chase was the prevailing party in the trial court. Rather, she contends that the trial court did not consider her "opposition and objections, identifying specific items on Chase's billings that [she] asserted were improperly billed as a result of wasteful or duplicative activities unnecessary for the prosecution of the case."

But in the order granting attorney fees to Chase, the trial court stated that it "reviewed the motion and the pleadings filed herein," which would include Stehrenberger's "Amended Opposition to Plaintiff JPMorgan Chase Bank, N.A.'s Motion to Fix Attorney Fees as Costs of Suit." Additionally, the trial court stated that the amount of fees and costs was "reasonable and necessary to prosecute plaintiff's claims in light of defendant's protracted defense of this matter." Given these statements in the order, the trial court considered Stehrenberger's objections to the attorney fees and thus it did not abuse its discretion when it made the award.

Both parties request attorney fees if they are the prevailing party on appeal. Because Chase is the prevailing party on appeal, it is entitled to fees and costs, subject to its compliance with RAP 18.1.

We affirm the grant of summary judgment and award reasonable attorney fees to Chase, subject to its compliance with RAP 18.1.

[1] Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

[2] CR 56(c).

[3] Clerk's Papers at 621, 633 (emphasis added).

[4] 90 Wn. App. 169, 176-77, 949 P.2d 412 (1998) (quoting RCW 62A.3-203(b)).

[5] Id. at 177.

[6] Id.

[7] (Emphasis added.)

[8] RCW 62A.3-309(a).

[9] In re Allen, 472 B.R. 559, 566 (B.A.P. 9th Cir. 2012).

[10] Brief of Respondent-Plaintiff JPMorgan Chase Bank, N.A. at 28-29.

[11] In re Allen, 472 B.R. at 566.

[12] Amended Brief of Appellant at 21-24 (citing Dennis Joslin Co., LLC v. Robinson Broad. Corp., 977 F. Supp. 491 (D.D.C. 1997); McKay v. Capital Res. Co., Ltd., 327 Ark. 737, 940 S.W.2d 869 (Ark. 1997); State Street Bank and Trust Co. v. Lord, 851 So.2d 790 (Fla. Dist. Ct. App. 2003)); see also Appellant's Statement of Additional Authority (citing In re Harborhouse of Gloucester, 505 B.R. 365 (Bankr. D. Mass. 2014)).

[13] Dennis Joslin Co., LLC, 977 F. Supp. at 495; McKay, 327 Ark. at 740-41; State Street Bank and Trust Co., 851 So.2d at 792; In re Harborhouse of Gloucester, 505 B.R. at 371-72.

[14] RCW 5.46.010.

[15] Reply Brief of Appellant at 10 (citing Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC, 399 Fed. Appx. 97, 102 (6th Cir. 2010)).

[16] Livonia Props. Holdings, LLC, 399 Fed. Appx. at 102.

[17] Collins v. Clark County Fire Dist. No. 5, 155 Wn. App. 48, 81, 231 P.3d 1211 (2010).

[18] Reeves v. McClain, 56 Wn. App. 301, 311, 783 P.2d 606 (1989).

[19] Morgan v. Kingen, 166 Wn.2d 526, 539, 210 P.3d 995 (2009).

Save trees - read court opinions online on Google Scholar.